HARRIET ACKEN, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF ROBERT C. ACKEN, PLAINTIFF-APPELLANT, v. JAMES ALLEN CAMPBELL, DEFENDANT, AND THE READING COMPANY, A PENNSYLVANIA CORPORATION, AND THE ELIZABETHTOWN WATER COMPANY, A NEW JERSEY CORPORATION, DEFENDANTS-RESPONDENTS.

Argued May 28, 1975—Decided June 24, 1975.

586

Mr. *Albert G. Besser* argued the cause for ·plaintiff–appellant (*Messrs. Hannoch, Weisman, Stern & Besser,* attorneys).

Mr. *Robert E. Monaghan* argued the cause for defendant-respondent The Elizabethtown Water Company (on the claim for damages) (*Messrs. Morgan, Melhuish, Monaghan, McCoid & Spielvogel,* attorneys).

*Mr. Clifford J. Sheehan* argued the cause for defendant–respondent The Elizabethtown Water Company (*Messrs. Hueston, Hueston & Sheehan* attorneys) (on the claim for punitive damages).

PER CURIAM. This appeal is taken on limited grant of certification, 67 *N. J.* 85, 68 *N. J.* 176 (1975), from a determination by the Appellate Division reversing a judgment for the plaintiff in a wrongful death action against the respondents railroad and water company and remanding the cause for a new trial. The factual background of the accident and the issues raised on the appeal to the Appellate Division are adequately recounted in the opinion of that court and need not be repeated here.

In brief, plaintiff's decedent was killed while driving his car across the railroad tracks at a private road near the water company's plant. Plaintiff claimed both defendants were guilty of willful and wanton negligence, the railroad in running trains over the crossing in violation of statutory and common-law duties of care for the safety of passersby, the crossing being asserted to be at a public road; and the water company in not warning the railroad of the carelessness of its trainmen and in permitting visitors and employees to park cars near the crossing in such a manner as to obstruct the vision of both passersby and trainmen.

The Appellate Division held there was no evidence in the case to permit the jury to find this to be a public road, and consequently the postulation of a statutory duty on the part of the railroad to take the safety measures dictated by the statutes, *N. J. S. A.* 48:12–54 to 58, in relation to public grade crossing, created prejudicial error requiring a reversal of the judgments. The court also held the trial court should have entered judgment for defendants on the counts for willful and wanton negligence, the evidence of negligence by neither defendant being sufficient to permit a reasonable finding of that degree of negligence.

■ Our grant of certification was as to plaintiff's claim against the water company only, and as to the following contentions of plaintiff only: (a) that the jury verdict of willful and wanton negligence of the water company necessarily subsumes a finding of at least ordinary negligence, and that at the retrial that issue should be taken to be concluded against the water company; and (b) that since the jury answered a special interrogatory as to the plaintiff's contributory negligence in the negative, that issue should also be taken to be concluded as against both defendants at the retrial.

We hold against plaintiff on both of these questions. Consideration of the record and the arguments satisfies us, in respect of the first contention, that the erroneous submission of the "public road" issue to the jury tainted the entire jury finding on negligence, and as to both defendants. Plaintiff does not argue that the intrusion of the concept of statutory responsibility for the safety precautions called for at a public road crossing, if erroneous, did not taint the entire verdict against the railroad company. Every consideration of logic and application of the proofs impels the same conclusion as to the water company. Since part of the plaintiff's case against the water company was the alleged failure of the latter to warn the railroad of its inadequate warnings to passersby of the train coming, any factor, like the special statutory precautions applicable at public grade crossings, which operated to elevate the railroad's duty of care, might well have been regarded by the jury as heightening the duty of the water company as well.

It would, moreover, be anomalous and unjust, as between the two defendants, the water company having cross-claimed against the railroad, to improve the possibility of the water company being held for negligence and the railroad ultimately not. The case for negligence against the water company is far weaker than that against the railroad.

Consequently, we find no merit in the first of the two points mentioned above.

■ We find equally lacking in merit the point as to the survival of the special verdict on contributory negligence. In the first place, the now adjudicated voiding of the verdicts of willful and wanton negligence and direction for a retrial of the issue of negligence as to both defendants, absent the clearest case of freedom from contributory negligence of the decedent, seems to argue for the good sense of a reappraisal of the negligence of all parties involved. Here there was quite a substantial case for the proposition that the decedent was contributorily negligent. The negligence issues are all closely intertwined.

Secondly, the negative finding by the jury on contributory negligence is suspect under all the circumstances. The trial judge had charged the jury that if they found willful and wanton negligence as to either defendant the issue of contributory negligence in relation to the claim against the defendant "would make no difference", contributory negligence of the decedent being no defense if the defendant were guilty of willful and wanton negligence. We are satisfied with the soundness of the contention of defendants that in view of those instructions there was a grave possibility that the jury, having concluded that both defendants were indeed guilty of willful and wanton negligence, regarded the special interrogatory on contributory negligence as not of significance and answered it routinely rather than with deliberation. The substantiality of that possibility, as well as the other considerations mentioned above, leads us to determine that the interests of justice call for a retrial of the issue of contributory negligence as well as of the other negligence issues.

Judgment affirmed.

CLIFFORD, J. (dissenting in part). While I concur in the determination that the plaintiff's case against the water company should be remanded to the trial court for disposition there (along with the claim against the railroad) of the negligence issue, I respectfully dissent from so much of the Court's opinion as requires relitigation of the contributory

negligence question. That issue was clearly and unmistakably resolved in favor of plaintiff and against defendants.

The trial judge in this case took special precautions to protect the integrity of the record. Inasmuch as this was a retrial, the first trial having resulted in a mistrial because the jury was unable to achieve agreement, all counsel had the text of the judge's first charge, which he delivered virtually unchanged. It was, as the record reveals, the subject of much informal discussion from the time the second trial started.

Among these discussions was one immediately preceding the summations and charge. This centered around the propriety of submitting to the jury the special interrogatory concerning decedent's contributory negligence. Perhaps at this point it would be well to set forth all the special interrogatories on the wrongful death action:

1. Do you find the Reading Railroad Co. guilty of willful and wanton negligence which was a proximate cause of the accident?

2. (Answer only if you answer No. 1 "No.") Do you find the Reading Railroad Co. guilty of negligence which was a proximate cause of the accident?

3. Do you find Elizabethtown Water Co. guilty of willful and wanton negligence which was a proximate cause of the accident?

4. (Answer only if you answer No. 3 "No.") Do you find Elizabethtown Water Co. guilty of negligence which was a proximate cause of the accident?

5. Do you find the decedent, Acken, guilty of contributory negligence which was a proximate cause of the accident?

6. (Answer if: A) you answer No. 1 "Yes;" or
(B) you answer No. 3 "Yes;" or
(C) you answer No. 2 "Yes" and No. 5 "No;" or
(D) you answer No. 4 "Yes" and No. 5 "No.")
What is the amount of your award for the plaintiff in the wrongful death action — pecuniary loss of the plaintiff?

In the event you cannot answer No. 6, your verdict will be "No cause of action."

The trial judge, predicting the result we have reached on the issue of willful and wanton negligence, explained his purpose in submitting interrogatory number five:

[I]n the event there is an appeal and a reversal on willful and wanton, it might be well to know how the jury determined contributory negligence so that, perhaps, it will save another trial at another time.

The court's charge took the customary course, dealing first with the negligence counts and then with decedent's contributory negligence. In no respect are those portions of the charge challenged. The judge then turned to the willful and wanton negligence counts, following it with the observation which the majority concludes led the jurors to believe the special interrogatory on contributory negligence was "not of significance" and to answer it "routinely rather than with deliberation." The significant instruction reads as follows:

If you conclude that either the Reading Company or Elizabethtown Water Company or both of them was guilty of willful and wanton misconduct which proximately brought about the decedent's death, it would make no difference whether or not the decedent was guilty of contributory negligence. In the event that you so find, that contributory negligence of the decedent, if you find it to be present, would not bar a recovery by him against such defendant or defendants' guilt of willful and wanton negligence.

At the conclusion of the charge the trial judge referred to the special interrogatories and to the instructions included therein. He told the jurors:

As far as the procedure taken by you in your deliberations, the Court has prepared a set of special interrogatories for you telling what you should address your attention to first and in the order and answering these various questions which we have. I think those questions and answers — the answers are to be provided by you. The questions are clear and the instructions given to you on the special interrogatories are clear. In the event you get into the jury room and find they are not clear in any way, why, of course, come down with a question and have your foreman send down a question to the Court regarding the interrogatories.

When the jury returned with a verdict, it was delivered in the following fashion, quite in keeping with the instructions on the special interrogatories:

THE CLERK: Ladies and gentlemen of the jury, have you agreed upon a verdict?

FORELADY: We have.

THE CLERK: Madam Forelady, on the wrongful death action, do you find the Reading Railroad Company guilty of willful and wanton negligence which was a proximate cause of the accident?

FORELADY: Yes.

THE CLERK: Do you find the Reading Railroad Company guilty of negligence which was a proximate cause of the accident?

FORELADY: We didn't answer that. We deleted that, according to our instructions.

THE COURT: Yes, that's correct.

THE CLERK: Do you find Elizabethtown Water Company guilty of willful and wanton negligence which was a proximate cause of the accident?

FORELADY: Yes.

THE CLERK: Do you find the decedent Acken guilty of contributory negligence which was a proximate cause of the accident?

FORELADY: No.

THE CLERK: What was the amount of your award for the plaintiff in the wrongful death action?

FORELADY: $170,000.

I recite these portions of the transcript and make such detailed reference to the proceedings to demonstrate not only the perfectly orderly way in which the judge went about his duties of instructing the jury, but also the clear understanding of those instructions, both oral and as written on the special interrogatories, manifested by the jury in the form of its verdict.

In submitting the special interrogatories, with instructions to the jury, the trial court was availing itself of the technique contemplated by *R.* 4:39–1 & 2, the first dealing with special verdicts and the second with a general verdict accompanied by answers to interrogatories. As this Court said in *Terminal Constr. Corp. v. Bergen Cty. Sewer Auth.*, 18 *N. J.* 294 (1955);

Special verdicts and interrogatories contain many valuable potentialities. See *Abbott's Civil Jury Trials* (*Viesselman, 5th ed.* 1935), *ch. XXVII, pp.* 951 *et seq.* One of the functions of special verdicts is to aid in the disposition of a case on review proceedings. They permit use on such review of special findings in the appellate

courts in immediate disposition without the necessity of remand for a retrial of all issues, or at least a reduction of the retrial to the portions of the judgment affected by the error. They enable errors to be localized so that the sound portions of the verdicts may be saved. 3 *Moore's Federal Practice* (1938), *sec.* 49.01, *p.* 3097. [*Id.* at 319.]

If the question or issue with respect to which the verdict or judgment is wrong is fairly separable from other issues, and the best interests of justice will be served by granting a partial new trial, the judgment may be set aside as to those issues affected by the error and preserved as to the issues not so affected. [citations omitted]. [*Id.* at 341.]

That the jury was able to comply with the court's instructions is made clear by the manner in which the forelady announced the verdict. When the clerk asked for a finding as to the railroad's negligence (there having already been an affirmative answer to the question as to whether the railroad was guilty of willful and wanton negligence), the spokesman was quick to point out that the jurors had "deleted" that question, "according to our instructions." There were, however, no conditions or restrictions placed upon their answering question number five inquiring as to the decedent's contributory negligence, which was answered in the negative.

Given this background I refuse to indulge in the assumption that the jurors could not follow the explicit instructions on contributory negligence or that they would not because that finding "would make no difference." They were instructed to make a finding on that issue but were given the benefit of an explanation of its legal effect — or lack of effect — in connection with the conclusion they might reach on the willful and wanton question. It seems to me they were entitled to that much explanation without, however, their becoming involved in the business of preserving issues for appeal. My notion of "good sense" does not at all argue for a "reappraisal of the negligence of all parties involved" under the circumstances.

Perhaps what this dissent illustrates most is the apparent differences betweeen the majority and myself about jurors being able conscientiously to follow instructions. By and

large I believe they can. To be sure there are situations where I resist the effort to require jurors to do the impossible, see *State v. DiPaglia,* 64 *N. J.* 288, 306 (1974) (dissenting opinion); *State v. Miller,* 67 *N. J.* 229, 245-246 (1975) (concurring and dissenting opinion), but this is not such a case. Nor is the situation one which is rife with confusion. The jurors simply had to determine whether the decedent exercised reasonable care for his own safety as he approached and traversed the railroad crossing. Nothing in this record suggests to me that they were confused or otherwise unable to make a good-faith resolution of that issue.

I would reverse so much of the judgment of the Appellate Division as remands for retrial the question of decedent's contributory negligence.

HUGHES, C. J. and PASHMAN, J., join in this opinion.

*For affirmance*—Justices MOUNTAIN, SULLIVAN and SCHREIBER and Judge CONFORD—4.

*Dissenting in part*—Chief Justice HUGHES and Justices PASHMAN and CLIFFORD—3.