291 N.J. Super. 10 (1996)
676 A.2d 1099
IAN DAVID KASS, PLAINTIFF-APPELLANT,
v.
GREAT COASTAL EXPRESS, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted March 27, 1996.
Decided May 31, 1996.
*14 Before Judges KING, KLEINER and HUMPHREYS.
Steven M. Kramer & Associates, attorneys for plaintiff (Mr. Kramer, of counsel and on the brief).
*15 Smith, Stratton, Wise, Heher & Brennan, attorneys for defendant (Peter R. Freed, of counsel and on the brief).
The opinion of the court was delivered by KLEINER, J.A.D.
Plaintiff Ian David Kass appeals from the entry of judgment in a trade libel action on behalf of defendant Great Coastal Express, Inc. We are called upon to review the concept of trade libel and the often invoked defense of qualified privilege. We conclude that the interrogatories to the jury did not comply with the legal precepts applicable to this cause of action and that this was harmful error requiring reversal. See R. 2:10-2. Despite the fact that plaintiff's appeal does not directly assail the instructions of the trial judge, we are constrained to reverse a determination predicated on erroneous instructions.
Plaintiff was employed by defendant from June 15, 1990 to July 7, 1990 as a truck driver/operator. After plaintiff left defendant's employ, he sought new employment with other companies in a similar capacity. Plaintiff learned that his employment applications with prospective employers received unfavorable treatment because the prospective employers received negative evaluations from defendant. Defendant's reports indicated that plaintiff had "been discharged," had "violated company policy," had "quit under load,"[1] and had "used company equipment without authorization." Plaintiff contends that these reports were defamatory and were not protected by any qualified privilege of defendant.
*16 As a result of a pre-trial ruling, the trial judge determined that defendant was entitled to claim a qualified privilege. That ruling is not challenged on appeal. The primary issues for trial focused on whether defendant's reports as to plaintiff's employment were defamatory and if so, whether defendant was protected by a qualified privilege despite the defamation.
In an effort to guide the jury in its deliberations, the trial judge prepared the following six special interrogatories to be answered by the jury in the course of its deliberations:
1. Has plaintiff proven by a preponderance of the evidence that defendants made injurious or disparaging statements about him?
2. Has plaintiff proven by a preponderance of the evidence that defendants made statements about him which were false?
3. Has plaintiff proven by a preponderance of the evidence that the statements made about him were made by the defendants with the knowledge that they were false or with reckless disregard for their truth or falsity?
4. Has plaintiff proven by clear and convincing evidence that defendant's sole, chief or primary motivation in communicating the statement was ill will or spite toward the plaintiff?
5. What is the amount of pecuniary damages that plaintiff has proven by a preponderance of the evidence he sustained which were proximately caused by the acts of the defendants?
6. Has plaintiff proven by a preponderance of the evidence that the conduct of the defendants was willful, wanton, or malicious?
The jury answered questions one, two and three in the affirmative. However, it then answered questions four and six in the negative. The jury responded to question five with the amount of $15,000.
After the jury returned its verdict, the trial judge heard oral argument from counsel. Plaintiff argued that the jury's answer to interrogatory three compelled entry of a verdict for plaintiff for $15,000. Defendant argued that the response to question four necessitated a judgment in its favor. The trial judge reserved decision and asked counsel to prepare post-trial briefs. The jury was discharged. Thereafter, the trial judge directed in a written opinion that the clerk enter judgment for defendant.
*17 As will be discussed hereafter, we conclude that the special interrogatories regarding the qualified privilege were incomplete. We have prepared, and have appended to this opinion, sample interrogatories that we conclude would have appropriately addressed the issues raised at the trial of this matter.

I
New Jersey defamation law has been subject to numerous modifications. Turf Lawnmower Repair v. Bergen Record Corp., 139 N.J. 392, 408, 655 A.2d 417 (1995). "The evolution of the law of defamation reflects the tension between society's competing interests in encouraging the free flow of information about matters of public concern and in protecting an individual's reputation." Ibid. (quoting Dairy Stores, Inc. v. Sentinel Publishing Co., 104 N.J. 125, 135-36, 516 A.2d 220 (1986)). Principles of defamation "embody the important public policy that individuals should generally be free to enjoy their reputations unimpaired by false and defamatory attacks." Id. at 409, 655 A.2d 417 (quoting Costello v. Ocean County Observer, 136 N.J. 594, 606, 643 A.2d 1012 (1994)).
The status of the plaintiff as either a private individual or public figure will dictate the weight of his interest in his reputation when in tension with principles of free speech. Ibid. See also Sisler v. Gannett Co., Inc., 104 N.J. 256, 264, 516 A.2d 1083 (1986) ("the classification of an individual as a public or private figure became the critical determination in defamation actions.") (citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)).
In this appeal we are concerned with private defamation. Such defamation is proved by a negligence standard. Turf Lawnmower, supra, 139 N.J. at 413, 655 A.2d 417; Sisler, supra, 104 N.J. at 256, 516 A.2d 1083. Under the negligence standard,
One who publishes a false and defamatory communication concerning a private person ... is subject to liability if, but only if, he:
(a) knows that the statement is false and that it defames the other,
(b) acts in reckless disregard of these matters, or

*18 (c) acts negligently in failing to ascertain them.
[Sisler v. Courier-News Co., Gannett Co., Inc., 199 N.J. Super. 307, 312-13, 489 A.2d 704 (App.Div. 1985), rev'd on other grounds, 104 N.J. 256, 516 A.2d 1083 (1986) (quoting Restatement (Second) of Torts § 580B (1976)).]
The negligence standard set forth in the Restatement is consonant with the New Jury Model Jury Charge on private defamation. That charge lists the specific elements of the cause of action as:
(1) The statement must be a defamatory statement of fact.
(2) The plaintiff must prove that the defamatory statement concerned the plaintiff.
(3) The plaintiff must prove that the defamatory statement is false.
(4) The plaintiff must prove that the defamatory statement was communicated to a person or persons other than the plaintiff.
(5) The plaintiff must prove that defendant actually knew the statement was false when he/she communicated it, or defendant communicated the statement with reckless disregard of its truth or falsity, or defendant acted negligently in failing to ascertain the falsity of the statement before communicating it.
[Model Jury Charges-Civil § 3.11B2.]
A plaintiff must prove these elements by a preponderance of the evidence to successfully prove his claim.
The trial judge obviously drafted interrogatories one, two, and three by referring to the Model Jury Charge, although interrogatory three omitted any phrase tantamount to the Model Charge wording, "or defendant acted negligently in failing to ascertain the falsity of the statement before communicating it."
Although plaintiff has argued on appeal that interrogatory three was designed to focus on the concept of qualified privilege, it was in fact clearly designed to focus on one element of the tort of private defamation. We therefore reject plaintiff's argument that the jury's affirmative response to interrogatory three constituted a finding that the privilege had been abused and thus compelled the entry of a verdict for plaintiff.

*19 II
Although a statement may be defamatory, under certain circumstances embodied in the concept of qualified privilege, even defamatory statements will be protected.
The principle of "qualified privilege" originally protected a person from legal liability for defamatory words uttered honestly and without improper motive. Coleman v. Newark Morning Ledger Co., 29 N.J. 357, 376, 149 A.2d 193 (1959). The policy behind the privilege is the "necessity that true information be given whenever reasonably required for `the protection of ... the interests of third persons or certain interests of the public.'" Williams v. Bell Telephone Labs. Inc., 132 N.J. 109, 121, 623 A.2d 234 (1993). The qualified privilege "has emerged as one of the prime means for the common law to balance the interests in reputation with the publication of information in the public interest." Dairy Stores, supra, 104 N.J. at 137, 516 A.2d 220. The qualified privilege permits a party to make a publication of a statement if to do so protects the interests of the recipient. Restatement (Second) of Torts § 594 (1977). For example, a party may make an otherwise defamatory statement about a former employee to a prospective employer concerning the qualifications of the former employee. Id. at § 595, cmt. i.
The Supreme Court has announced that in libel actions, "a qualified privilege extends to an employer who responds in good faith to the specific inquiries of a third party regarding the qualifications of an employee." Erickson v. Marsh & McLennan Co., 117 N.J. 539, 562, 569 A.2d 793 (1990). Even if such a statement is defamatory, it will not be actionable. Id. at 563, 569 A.2d 793. In the instant matter, defendant made statements to DAC Services, a prospective employer of plaintiff, about plaintiff's qualifications. As noted earlier, the trial judge concluded in a pre-trial ruling that defendant was entitled to the qualified privilege.
A plaintiff, however, may overcome the qualified privilege by proving that the immunized defendant abused its privilege. *20 The Supreme Court addressed abuse of the qualified privilege in Coleman v. Newark Morning Ledger Co., 29 N.J. 357, 149 A.2d 193 (1959). The Court acknowledged that the qualified privilege permits otherwise defamatory statements to be made for a proper motive. Id. at 373, 149 A.2d 193. If, however, the statement has been made for some improper motive, the privilege does not attach to the statement. Id. at 373-74, 149 A.2d 193.
`[T]he court will look to the primary motive or purpose by which the defendant apparently is inspired'; it would seem that `the privilege is lost if the publication is not made primarily for the purpose of furthering the interest which is entitled to protection'; if the defendant is moved `chiefly' by `motives of ill will, or to accomplish a distinct objective which may be legitimate in itself but is not within the privilege,' ... he is given no immunity.
[Id. at 375, 149 A.2d 193 (quoting Prosser on Torts 601, 627-28 (2d ed.)).]
At common law, the privilege or immunity "could be overcome only by a showing of `ill motive or malice in fact.'" Erickson, supra, 117 N.J. at 565, 569 A.2d 793 (quoting Rainier's Dairies v. Raritan Valley Farms, 19 N.J. 552, 558, 117 A.2d 889 (1955)). Erickson explained that because the term "malice" had been subject to varied interpretations, the New Jersey Supreme Court in Dairy Stores had adopted a new, "more workable standard." Ibid.
In Dairy Stores, the Court announced its intention to move away from the "malice" standard. 104 N.J. at 151, 516 A.2d 220. The Court wrote, "Although we discard the label [of malice], we adhere to the principle that to overcome a qualified or conditional privilege, a plaintiff must establish that the publisher knew the statement to be false or acted in reckless disregard of its truth or falsity." Ibid. (citing Coleman v. Newark Morning Ledger Co., 29 N.J. 357, 376, 149 A.2d 193 (1959)).[2] The rule announced in Dairy Stores is consistent with the Restatement, which explains *21 that a qualified privilege is abused if the defamatory statement is made with knowledge that it was false or with reckless disregard for its truth or falsity. Restatement (Second) of Torts § 600 (1977). A publisher has acted with reckless disregard if it possessed a high degree of awareness that the statement was probably false. Id. at cmt. b.
A plaintiff can prove an abuse of the qualified privilege by demonstrating that the defendant did not "act for the purpose of protecting the interest for the protection of which the privilege is given." Bainhauer v. Manoukian, 215 N.J. Super. 9, 42-43, 520 A.2d 1154 (App.Div. 1987) (quoting Restatement (Second) of Torts § 603 (1977)). A defendant can also abuse its qualified privilege by excessive publication, that is, "publishing defamatory matter without a reasonable belief `that the publication is a proper means of communicating the defamatory matter to the person to whom its publication is privileged.'" Id. at 43, 520 A.2d 1154 (quoting Restatement (Second) of Torts § 604 (1977)). Finally, a defendant will abuse its privilege "if [it] does not reasonably believe the matter to be necessary to accomplish the purpose for which the privilege is given." Ibid. (quoting Restatement (Second) of Torts § 605 (1977)).
The Supreme Court recently summarized the analysis to be employed in determining whether a qualified privilege has been abused. In Williams v. Bell Telephone Labs. Inc., 132 N.J. 109, 623 A.2d 234 (1993), the Court announced that a qualified privilege is abused if "(1) the publisher knows the statement is false or the publisher acts in reckless disregard of its truth or falsity, ... (2) the publication serves a purpose contrary to the interests of the qualified privilege, ... or (3) the statement is excessively published...." Id. at 121, 623 A.2d 234 (citing Dairy Stores, supra, 104 N.J. at 151, 516 A.2d 220, and Bainhauer, supra, 215 N.J. Super. at 43, 520 A.2d 1154). The Court emphasized that "the critical determination is whether, on balance, the public interest in obtaining information outweighs the individual's right to protect his or *22 her reputation." Ibid. (quoting Dairy Stores, supra, 104 N.J. at 151, 516 A.2d 220).
Thus, Dairy Stores and Williams represent a departure from the common law notion that an abuse of a qualified privilege could be proved only upon a showing of malice in fact, i.e., ill will or other improper motive. Cf. Fees v. Trow, 105 N.J. 330, 341, 521 A.2d 824 (1987) (holding that abuse of a qualified privilege will be found if "defendant is moved primarily by ill will"); Lutz v. Royal Ins. Co., 245 N.J. Super. 480, 499, 586 A.2d 278 (1991) (holding that a showing of ill will defeats a qualified privilege if it is the "primary motivating force" behind a defamatory statement) (quoting Coleman, supra, 29 N.J. at 375, 149 A.2d 193).
We observe that the Model Jury Charge pertinent to abuse of privilege still retains a vestige of the concept of ill will and reads as follows:
To establish that defendant has lost or abused the privilege to communicate the defamatory statement, plaintiff must prove by a preponderance of the evidence that:
(1) Defendant did not act for the purpose of protecting the interest which gave rise to the privilege. If you find that defendant's purpose in communicating the allegedly defamatory statement was in no part motivated by ... a desire to protect the lawful interests of the person(s) to whom the allegedly defamatory statement was communicated ... then defendant is not entitled to the protection of the privilege and you may find for the plaintiff. Or if you find that defendant's sole motivation in communicating the statement was out of ill will or spite toward the plaintiff, then you may find for plaintiff. But if you find that the statement was motivated in part for the purpose of protecting defendant's lawful interest, and in part out of spite or ill will toward plaintiff, then the privilege has not been abused and you must find for defendant.
or that
(2) Defendant did not reasonably believe that the person(s) to whom the statement was communicated had a proper interest in receiving the statement. The privilege is lost where publication is excessive; that is, where the defamatory information is communicated to persons who have no legitimate interest in receiving the information. If you find that defendant did not reasonably believe that the persons to whom the defamatory statement was communicated had a proper and legitimate interest in receiving the statement, then defendant has lost the privilege;
or that
(3) Defendant did not reasonably believe that some or all of the defamatory information contained in the statement was reasonably necessary to accomplish the *23 purpose and protect the interest which gave rise to the privilege. Thus, if you conclude the defendant did not have a reasonable belief that some or all of the defamatory information was relevant or necessary... to protect the lawful interests of the person(s) to whom he/she communicated the defamatory statements, ... then defendant has lost the protection of the privilege as to the unnecessary or irrelevant defamatory information.
[Model Jury Charges-Civil § 3.11B3.]
We also note that the text of the Model Jury Charge, as presently written, cites the burden of proof as "preponderance of the evidence." That is clearly wrong. As articulated in Erickson, abuse of a qualified privilege must be proven by clear and convincing evidence. 117 N.J. at 565, 569 A.2d 793. See also Williams, supra, 132 N.J. at 121, 623 A.2d 234. "Indeed, the imposition of a lesser burden of proof would fail to adequately protect the interests underlying the privilege." Erickson, supra, 117 N.J. at 565-66, 569 A.2d 793. Finding that the jury had found malice only on the preponderance of the evidence, the Erickson Court remanded, holding that the plaintiff was obligated to prove malice by clear and convincing evidence. Id. at 566-67, 569 A.2d 793. Accordingly, we recommend that the Supreme Court Civil Practice Committee redraft Model Jury Charge §§ 3.11B.3 to accurately reflect the burden of proof announced in Erickson.
Additionally, the Model Charge instructs that an abuse of the privilege may be shown if defendant's sole motive is ill will. That statement is contradictory to Coleman and Lutz, which explain that ill will need only be a primary or chief motivation, not the sole motivation. We recommend that this, too, be corrected.
In cases in which "qualified privilege" is invoked as a defense and special interrogatories are utilized, inclusion of each type of privilege abuse as a separate question should be the norm. If a type of privilege abuse is omitted due to an absence of relevant evidence, the reasons for omission should be discussed with counsel on the record during the charge conference prior to closing statements.

*24 III
In the instant case, defendant's claim of qualified privilege would be defeated by plaintiff's proving by clear and convincing evidence that either: (1) defendant's primary motive in making the statements was not to advance the interests of DAC Services, plaintiff's prospective employer, but was instead ill will or spite directed at plaintiff (i.e., that defendant did not act with the purpose for which the privilege was granted); (2) defendant made the defamatory remarks with knowledge that they were false or with reckless disregard for their truth or falsity; (3) defendant excessively published the statement; or (4) defendant did not reasonably believe the statement to be necessary for the purpose for which the privilege was granted.
Reckless disregard for or knowledge of a statement's falsity is an element of the tort of trade libel. As noted in proving the elements of the tort, plaintiff is held to a preponderance of the evidence standard. However, to overcome the defense of qualified privilege, plaintiff must prove by a standard of clear and convincing evidence that defendant acted with reckless disregard for or with knowledge of a statement's falsity. A jury could therefore be required to consider the question twice. For instance, the trial judge in this case would have been required to ask the following questions:
3. Has plaintiff proven by a preponderance of the evidence that the statements made about him were made by the defendants with the knowledge that they were false or with reckless disregard for their truth or falsity?
4. Has plaintiff proven by clear and convincing evidence that the statements made about him were made by the defendants with the knowledge that they were false or with reckless disregard for their truth or falsity?
The first question would pertain to an element of the tort while the second to an abuse of the qualified privilege. To require the jury to evaluate the same evidence twice by two different standards of proof would be confusing and difficult. Obviously, successful proof of the latter burden necessitates that the former burden has been met. We therefore conclude that in a case of trade libel in which qualified privilege is an issue, the jury should *25 be asked to consider the issue only once. By raising the standard of proof to the higher "clear and convincing" standard, an affirmative jury response will indicate that plaintiff in fact has proved an element of the tort and also has proved that defendant's privilege had been abused, thus defeating defendant's defense.
In the instant case, the trial judge correctly posed interrogatory three to the jury to determine whether plaintiff had proved an element of the tort. The judge, however, erred when she failed to pose the same question, employing the higher clear and convincing proof standard, to determine if the plaintiff had proved that defendant was not entitled to the qualified privilege.
As discussed, there are four ways in which defendant's action may defeat a claim of qualified privilege. The special interrogatories submitted to the jury only focused upon one of those enumerated methods, defendant's ill will or spite. The judge failed to direct any interrogatory to the jury referencing the other three bases to defeat the qualified immunity privilege.
Additionally, plaintiff specifically requested that the charge focus in part upon the concept that defendant should be denied the benefit of the qualified privilege if defendant made the defamatory remarks with knowledge that they were false or with reckless disregard for their truth. The judge rejected this request to charge. She gave as her reason, "[P]laintiff included in his requests to charge the reckless disregard ground, but no reference to the applicable standard of proof." We consider the rejection of plaintiff's request for charge to be reversible error. Although the request as formulated by plaintiff omitted the standard of proof, the judge has the responsibility to determine the applicable standard of proof. The judge should have accepted the request and sua sponte added to the requested charge the applicable burden of proof.
Although plaintiff's counsel did not note his objection on the record when the court refused to instruct the jury as requested, we consider the error as harmful error, even in the absence of a *26 timely objection. See R. 1:7-2; R. 1:8-7(a); R. 1:7-5. The jury may have concluded by clear and convincing evidence that the defendants acted with knowledge of the falsity or with reckless disregard for truth or falsity. In such a case, plaintiff should succeed. However, the jury was not asked this question and we therefore have no way of knowing whether the defense of qualified immunity was overcome.
When reviewing a jury charge for error, we examine the charge as a whole. State v. Maldonado, 137 N.J. 536, 579, 645 A.2d 1165 (1994). The charge as a whole should explain to the jury the "applicable legal principles and how they are to be applied in light of the parties' contentions and the evidence produced in the case." Rendine v. Pantzer, 276 N.J. Super. 398, 431, 648 A.2d 223 (App. Div. 1994), modified on other grounds, 141 N.J. 292, 661 A.2d 1202 (1995) (quoting Navarro v. George Koch & Sons, Inc., 211 N.J. Super. 558, 574-75, 512 A.2d 507 (App.Div.), certif. denied, 107 N.J. 48, 526 A.2d 138 (1986)). "The charge as a whole should state the law `correctly and intelligently,' so that ordinary jurors can understand it." Ibid. An inadequate charge is a poor candidate for application of the harmless error standard. State v. Simon, 79 N.J. 191, 206, 398 A.2d 861 (1979).
Although special interrogatories are not precisely a part of a jury charge, they are presented to the jury immediately following the jury charge and are designed to repeat and highlight the salient issues discussed in the jury charge. A misstatement of law in a special interrogatory or the omission of a question pertinent to an element of an offense or a defense deprives a party litigant of a fair trial and must likewise be deemed reversible error. See Fineman v. New Jersey DHS, 272 N.J. Super. 606, 626, 640 A.2d 1161 (App.Div. 1994).
The judgment in favor of defendant is reversed. The matter is remanded to the Law Division for a new trial on all issues. Although the jury did answer special interrogatories concluding that defendant's statement was defamatory and did consider the issue of damages, we conclude that a new trial limited solely to the *27 issue of qualified immunity would be confusing. It would require the trial judge to substantially explain the underlying facts proven at the first trial. The concept of qualified privilege is best understood if explained in the context of a full presentation. Moreover, the initial trial was short and plaintiffs damage claim did not involve expert testimony. Ahn v. Kim, 281 N.J. Super. 511, 534-35, 658 A.2d 1286 (App.Div.), certif. granted, 142 N.J. 518, 665 A.2d 1110 (1995) (ordering a new trial on all issues where issue requiring new trial is closely intertwined with issues resolved in initial trial) (citing Acken v. Campbell, 67 N.J. 585, 589, 342 A.2d 172 (1975), and Moraca v. Ford Motor Co., 66 N.J. 454, 460-66, 332 A.2d 599 (1975)).

APPENDIX

JURY QUESTIONNAIRE
1. Has plaintiff proven by a preponderance of
 the evidence that defendants made injurious
 or disparaging statements about him? YES ____ NO ____
2. Has plaintiff proven by a preponderance of
 the evidence that defendants made these
 statements about him which were false? YES ____ NO ____
3. Has plaintiff proven by a preponderance of
 the evidence that these defamatory
 statements were communicated by defendant to
 another person or persons? YES ____ NO ____
 If your answers to either questions # 1, # 2
 or # 3 are "no," your deliberations are
 complete.
 If your answers to questions # 1, # 2 and #
 3 are all "yes," proceed to question # 4 and
 answer each part of question # 4.
4a. Has plaintiff proven by clear and convincing
 evidence that defendant's primary motive in
 making the statements was not to advance the
 interests of
*28 another person or persons, but was instead
 ill will or spite directed at plaintiff? YES ____ NO ____
 OR
4b. Has plaintiff proven by clear and convincing
 evidence that these statements made about
 him were made by the defendants with the
 knowledge that they were false or with
 reckless disregard for their truth or
 falsity? YES ____ NO ____
 OR
4c. Has plaintiff proven by clear and convincing
 evidence that defendant excessively
 published these statements? YES ____ NO ____
 OR
4d. Has plaintiff proven by clear and convincing
 evidence that defendant did not reasonably
 believe the statement to be necessary for
 the purpose for which the privilege was
 granted? YES ____ NO ____
 If you have answered "yes" to either
 questions # 4a, # 4b, # 4c or # 4d, proceed
 to question # 5.
 If you have answered "no" to questions # 4a,
 # 4b, # 4c and # 4d, your deliberations are
 complete.
5. What is the amount of pecuniary damages that
 plaintiff has proven by a preponderance of
 the evidence he sustained which were
 proximately caused by the acts of the
 defendants? $ ____
6. Has plaintiff proven by a preponderance of
 the evidence that the conduct of the
 defendants was willful, wanton or malicious
 and that an award of punitive damages is
 warranted? YES ____ NO ____
*29 HUMPHREYS, J.A.D., dissenting and concurring.
I concur in the reversal of the judgment substantially for the reasons stated by the majority. I respectfully dissent from the holding that the new trial be on all issues. The new trial should be limited to the only issue raised and decided on this appeal, whether the jury was properly instructed on qualified privilege.
The issues in this case, except for qualified privilege, were all properly tried and determined. The jury decided that the defendant made defamatory statements about plaintiff (interrogatory # 1), that the statements were false (interrogatory # 2), that the plaintiff sustained pecuniary damages of $15,000 (interrogatory # 5) and that there was no basis for punitive damages (interrogatory # 6). The jury was properly instructed as to these issues. No one has challenged the jury's determination of these issues. No sound reason has been advanced as to why these issues should be retried.
A primary reason for the use of jury interrogatories is to prevent what the majority has ordered here, a new trial on the whole case. See Terminal Constr. Corp. v. Bergen Cty. Sewer Auth., 18 N.J. 294, 319, 113 A.2d 787 (1955); see also 5A Moore's Federal Practice § 49.02 (2d ed. 1990). A new trial on all issues is especially unwarranted where, as here, the jury has "clearly and unmistakably resolved" certain issues. Acken v. Campbell, 67 N.J. 585, 590, 593, 342 A.2d 172 (1975) (Clifford, J., dissenting).
As to the cases relied upon by the majority, we concluded in Ahn v. Kim, 281 N.J. Super. 511, 534, 658 A.2d 1286 (App.Div.), certif. granted, 142 N.J. 518, 519, 665 A.2d 1110 (1995), that the erroneous jury instruction "irremediably tainted the jury's special verdicts." In Acken v. Campbell, supra, 67 N.J. at 589, 342 A.2d 172, a majority of the Court reached the same conclusion. In Moraca v. Ford Motor Co., 66 N.J. 454, 461, 332 A.2d 599 (1975), the Court decided that in the framework of that product liability case, the plaintiff's contributory negligence was not separable and *30 therefore the full issue of liability, including contributory negligence, should be retried.
In the present case, the confusion on qualified privilege casts no taint, irremediable or remediable, on the other issues decided by the jury. Nor is the qualified privilege issue closely intertwined with or inseparable from the issues properly determined by the jury.
Contrary to the majority opinion, a trial on only the qualified privilege issue will be less confusing than a trial on all issues. The judge will simply advise the jury that (1) it has previously been determined that the defendant made certain false and defamatory statements about the plaintiff; and (2) that the only issue for this jury is whether plaintiff has by clear and convincing evidence overcome the defendant's qualified privilege. See interrogatory # 4 in the majority opinion at p. 28, 676 A.2d at p. 1108.
Under the majority decision, the jury will be confronted with six interrogatories which require the jury to apply different standards of proof. See majority opinion at pp. 26-28, 676 A.2d at pp. 1107-08. Far preferable is to give the jury only one interrogatory (# 4) involving the application of only one standard of proof.
Particularly unwarranted is a retrial on damages. The plaintiff sought "at least" $546,000 in compensatory damages and also "special" damages. The jury awarded plaintiff $15,000 in compensatory damages. The jury by its answer to interrogatory # 6 precluded any special or punitive damages. Neither party has appealed from the jury's decision on damages. I cannot conceive of any reason why the parties and the trial court should be burdened with another trial on the "clearly and unmistakably resolved" issue of the plaintiff's damages. See McAndrew v. Mularchuk, 38 N.J. 156, 161-162, 183 A.2d 74 (1962) (retrial should be on liability only, damages having been fully tried and determined by the jury); Abbamont v. Piscataway Tp., 269 N.J. Super. 11, 33, 634 A.2d 538 (App.Div. 1993), aff'd, 138 N.J. 405, 650 A.2d 958 (1994) (retrial should be on liability only, no basis having been shown for a retrial of compensatory damages); Lewis *31 v. Preschel, 237 N.J. Super. 418, 424, 568 A.2d 106 (App.Div. 1989) (retrial should only be on allocation of damages because the total dollar damages had already been determined and need not be addressed again).
Unnecessary litigation, here relitigation, places undue strain on the litigants and the court. Our trial courts are already overburdened with congested calendars and backlogs. We should not increase that burden unnecessarily.
NOTES
[1] From the record, we are able to conclude that "quit under load" references an allegation that plaintiff left a depot where he had been dispatched to retrieve a shipment of product without loading his tractor trailer with the product. Plaintiff admits having arrived at the depot under the impression that the product would be loaded into defendant's tractor-trailer by depot employees. When plaintiff learned that he would be required to load his trailer himself, he unhitched the trailer, which was owned by defendant, and left the trailer and the product at the depot. Plaintiff drove home in the tractor, which was plaintiff's property.
[2] Although Dairy Stores purports to abandon the label of malice, the Supreme Court, in a decision from the same term as Dairy Stores, wrote that the qualified privilege will protect statements unless they were made with malice. Sisler, supra, 104 N.J. at 272, n. 3, 516 A.2d 1083 (citing Coleman, supra, 29 N.J. at 376-79, 149 A.2d 193).