686 A.2d 766

CHERYL N. HELMAR, PLAINTIFF–RESPONDENT/CROSS–APPEL-
LANT, v. WALTER HARSCHE AND WEICHERT REALTORS,
DEFENDANTS–APPELLANTS/CROSS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 6, 1996—Decided December 26, 1996.

Before Judges MUIR, Jr., KLEINER and COBURN.

*Barry J. Wendt* argued the cause for appellants/cross-respondents.

*Thomas N. Ganiari* argued the cause for respondent/cross-appellant.

The opinion of the court was delivered by

KLEINER, J.A.D.

Defendants Walter Harsche and Weichert Realtors appeal from a judgment entered after a jury verdict which determined that defendants had committed consumer fraud, proscribed by the Consumer Fraud Act, *N.J.S.A.* 56:8–1 to –20, and were liable to plaintiff Cheryl N. Helmar for $5,450. The verdict was trebled by the judge to $16,350, as required by *N.J.S.A.* 56:8–19.

Plaintiff's three-count complaint alleged that defendants committed fraud, consumer fraud, and were negligent in the sale of real estate. Plaintiff's fraud complaint was summarily dismissed on a pre-trial motion. At the conclusion of the trial, based on special interrogatories, the jury determined that although defendants were twenty-five percent negligent, plaintiff, "by the acts of others," was seventy-five percent negligent. Plaintiff was thus denied damages on her negligence claim. The jury determined, however, that defendants had committed consumer fraud.

Prior to trial, defendants sought leave to name plaintiff's attorney in the real estate transaction as a third-party defendant. Defendants argued that the attorney was negligent and sought indemnification and contribution under the Joint Tortfeasors Contribution Law, *N.J.S.A.* 2A:53A–1 to –5, and an assessment of negligence under the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1 to–5.3. Defendant's motion was denied, and the matter proceeded to trial.

At the close of plaintiff's case, and again at the close of all evidence, defendants sought dismissal of plaintiff's complaint. Both motions were denied. After the jury verdict, defendants

moved for judgment notwithstanding the verdict and, alternatively, for a new trial. Again, both motions were denied.

After the trial, plaintiff's counsel sought an award of counsel fees, filing fees, and reasonable costs of suit, pursuant to *N.J.S.A.* 56:8–19. Although counsel fees were awarded in a sum substantially less than requested, the trial judge denied the application for filing fees and reasonable costs of suit.

Defendants appeal, contending that the motion judge erred when he denied defendants' motion to file a third-party complaint and that the trial judge erred when he denied the following motions: defendants' motion for a dismissal of plaintiff's complaint at the close of plaintiff's case; defendants' motion to dismiss at the close of all evidence; defendants' motion for judgment notwithstanding the verdict; and defendants' alternative motion for a new trial.

We conclude that the motion judge erred when he denied defendants' motion to join plaintiff's former attorney as a third-party defendant, and that this error had a negative impact on the entire trial, thus necessitating a reversal of the judgment and a remand for a new trial on all issues.

Plaintiff cross-appeals, contending that the trial judge erred in reducing her application for attorneys' fees and in denying her filing fees and reasonable costs of suit. Because of our decision on defendants' appeal, we need not address plaintiff's cross-appeal.

I

In the spring of 1988, plaintiff, a widow, living in Willingboro and operating a pet grooming business on East Camden Avenue in Moorestown, noticed a Weichert Realtors sign on a triplex across the street from her business. Plaintiff inquired about the property, and defendant Harsche, a real estate agent employed by defendant Weichert, advised plaintiff that the asking price for the triplex was $135,000. Harsche also told plaintiff that the present owner occupied the first floor unit and rented the second and third

floor units. After several discussions, Harsche and the listing agent showed the property to plaintiff, who was accompanied that day by a friend, Linda Crim.

An exterior staircase led to a hallway on the second floor. An interior staircase from that hallway provided the only access to the third floor apartment. The owner [1] and the listing agent stayed on the first floor while plaintiff, Crim, and Harsche viewed the second and third floor apartment units. While in the third floor unit, Crim asked Harsche whether a fire escape was needed. According to plaintiff,

> [Harsche] went into a closet and there was a metal ladder in the closet.... He brought it out. He took it over to the window and he showed us how you hook it on the window and you throw it over and you would climb down this ladder if there was a fire.

Plaintiff recalled that Crim asked, "why does that replace a fire escape," and Harsche responded that "he had talked to the fire marshal and that the fire marshal said that that was okay ... that was all you needed ... instead of a fire escape." According to plaintiff, she and Crim specifically asked Harsche, "[d]oes this apartment need a fire escape," and he answered, "[n]o."

Plaintiff and Crim both remembered asking Harsche whether it was necessary to have "any kind of a license to run an apartment house," and again he answered in the negative. Plaintiff testified that Harsche explained to her that since there were only three units in the building, one of which would be owner-occupied, plaintiff would be "in a special category" and would not be considered "a professional landlord." Harsche also represented to plaintiff that the property was zoned for triplex use.

Plaintiff testified that Harsche assisted her in a financial analysis to determine whether she would be able to afford the property and meet her prospective mortgage obligation. Harsche also assisted plaintiff in completing a mortgage application. Once it

---

[1] The owner died prior to the date that suit was instituted. Plaintiff's brief indicates that due to the modest value of the owner's estate, she elected not to name the estate as a party defendant.

was determined that, with two rental incomes derived from the second and third floor units in the triplex, plaintiff would be able to meet her mortgage obligation, plaintiff made an offer to purchase the property for $125,000. The offer was accepted.

Plaintiff signed the contract of sale, prepared by defendants, on April 11, 1988. Paragraph fifteen provided: "Seller makes no representation concerning existing zoning ordinances except that Seller's use of the property is not presently in violation of any ordinances and that the present use as a triplex may be continued."

Another disclaimer appeared in paragraph nineteen of the contract:

> This contract is entered into by Seller and Buyer based upon their independent knowledge of the value of the property and their full understanding of the meaning of all the provisions of this Contract and not on any representations made by either of them to the other, or by the real estate broker or brokers involved.
>
> The broker(s) named in this Contract, their personnel and associates have been acting as agents only for the Seller, and are not to be held liable either to Seller or Buyer for the performance or non-performance of any of the terms of this Contract. Seller and Buyer agree that they are entering into this Contract without any reliance upon any representations or statements which may have been made by personnel or associates of the realty firm(s).

According to plaintiff, Harsche told her to retain an attorney to review the contract and attend the closing "for my own safety." Plaintiff thereafter retained Louis Colaguori, Esq., although a formal retainer agreement was never prepared for plaintiff's signature. Colaguori had been admitted to practice law in 1972 and had handled over 100 residential real estate transactions. He added an addendum to the contract requiring the seller to supply plaintiff with copies of the leases. At trial, Colaguori testified that he was aware of the Uniform Fire Code and the Hotel and Multiple Dwelling regulations [2] but did not check to insure that

---

[2] Regulations for Maintenance of Hotels and Multiple Dwellings, *N.J.A.C.* 5:10–1.1 to –27.6, enacted pursuant to the Hotel and Multiple Dwelling Law, *N.J.S.A.* 55:13A–1 to –20, applies to any building "in which three or more units of dwelling space are occupied, or are intended to be occupied by three or more

plaintiff's property complied with them because "I thought that it was not within the terms of my understanding with [plaintiff]." He also testified that plaintiff never mentioned the layout of the house, the third floor unit, or the chain ladder.

Plaintiff also retained Eagle Home Inspection, which inspected the property on April 13, 1988, and issued a report. The report included the caveat that it "does not constitute a code inspection and should not be considered as such."

Plaintiff's mortgage commitment contained the following requirement: "[t]he property is to comply with all applicable laws and code enforcement requirements, and your attorney is to certify same." Plaintiff, however, never shared this document with her attorney. Colaguori testified that he never certified that the property complied with laws and code requirements. At the closing, on June 1, 1988, no one requested a copy of the required certification. Although a title insurance policy was obtained from the Stewart Title Guaranty Company, the policy excluded "[a]ny law ... or governmental regulation ... restricting or regulating or prohibiting the occupancy, use or enjoyment of the land, or regulating the character ... of any improvement now or hereafter erected on the land, ... or the effect of any violation of any such law ... or governmental regulation."

On May 15, 1992, plaintiff's triplex was inspected by a representative of the Department of Community Affairs, Bureau of Housing Inspection. A report based on that inspection and an order were issued on August 3, 1992. Plaintiff was ordered to abate twenty-one different code violations, including: providing a

---

persons who live independently of each other." *N.J.S.A.* 55:13A–3k. The owner of each multiple dwelling must obtain a certificate of registration from the commissioner of the Department of Community Affairs, which must be posted "in a conspicuous location." *N.J.S.A.* 55:13A–13c.

The Fire Safety Code, *N.J.A.C.* 5:18–4.1 to –4.19, enacted pursuant to the Uniform Fire Safety Act, *N.J.S.A.* 52:27D–192 to –213, requires at least two exits for "[e]very story utilized for human occupancy having an occupant load of 500 or less...." *N.J.A.C.* 5:18–4.11(a).

second means of egress from the third floor apartment; making improvements to the entrance doors; installing an automatic fire suppression system and a fire separation ceiling in the basement; providing handrails on stairways; and various other repairs and improvements.

Thereafter, plaintiff filed a complaint against defendants alleging fraud, consumer fraud, and negligence. At trial, plaintiff explained why she blamed defendants but not her attorney, and others, such as the home inspectors, the title insurer, or the mortgagee:

> My attorney ... just went to closing and went over the paperwork.... I didn't blame anybody else because they're not the people that told me I didn't need a license. If [Harsche] had told me the truth in the beginning I wouldn't have bought this house.... or I would have paid a hell of a lot less money for it....

At trial, in August 1995, the parties stipulated that $5,450 was a reasonable estimate for the required fire escape, and $5,730 was a reasonable estimate for the other necessary repairs and improvements. Plaintiff testified that she had not had the money to make the required repairs at the time of the inspection, despite her attempts to attain necessary financing. Plaintiff also testified that she was required to cancel her tenant's lease for the third floor unit effective September 1992 with a resulting loss of $525 per month in rent.

II

Defendants' answer denied any act of intentional fraud, denied committing consumer fraud, and denied any act of negligence. Among the many separate defenses pled, defendants contended that plaintiff's damages were not the proximate result of defendants' acts, that even if defendants were negligent, plaintiff was comparatively negligent, and that plaintiff's loss was attributable to her real estate attorney who was either jointly or solely negligent.

During discovery, defendants deposed Colaguori. Based upon his testimony, defendants concluded that Colaguori's negligence

either was the sole cause of plaintiff's loss, constituting a superseding act of negligence, or, alternatively, that Colaguori's negligent representation of his client was a concurrent cause of plaintiff's loss. Defendants therefore sought to name Colaguori as a third-party defendant.

Defendants filed a motion for summary judgment, contending that discovery had failed to reveal facts supportive of plaintiff's claim of actual fraud, consumer fraud, or negligence. Alternatively, defendants argued that if their motion for summary judgment was denied, they should be permitted to join Colaguori as a third-party defendant.

In a letter opinion, the motion judge granted defendants' motion to dismiss the first count of plaintiff's complaint, alleging fraud. The motion judge denied defendants' motions to dismiss the other counts. The judge also denied defendants' alternative motion seeking leave to file a third-party complaint. The judge concluded:

> Defendant's [sic] proposed third party complaint requests relief in the form of contribution and indemnity. I see two problems with this potential claim.
>
> First, claims for contribution and indemnification do not arise until after a judgment is entered against a defendant. *Cola v. Packer,* 156 *N.J.Super.* 77, 81 [383 *A.*2d 460] (App.Div.1978). In this case, the court has [not] entered a judgment against defendant. Thus defendant's [sic] motion to implead is premature.
>
> Second, the third party complaint alleges that Mr. Colaguori had a duty to defendant to inform plaintiff about the code violations. However, an attorney is not liable to third persons for negligence in performance of his professional duties. *Stewart v. Sbarro,* 142 *N.J.Super.* 581 [362 *A.*2d 581] (App.Div.), *certif. denied* 72 *N.J.* 459 [371 *A.*2d 63] (1976). Moreover, both plaintiff and Mr. Colaguori stated that Mr. Colaguori was not hired to inspect the performance or to provide advice as to code violations. Thus, there is no basis for allowing this claim against Mr. Colaguori. As such, the court denies this motion.

The motion judge misconstrued the purpose of defendants' proposed third-party complaint, he misconstrued the legal principles applicable to a claim for legal malpractice, and he disregarded the entire controversy doctrine as enunciated in *Cogdell v. Hospi-*

*tal Center at Orange,* 116 *N.J.* 7, 560 *A.*2d 1169 (1989).[3]  Defendants should have been permitted to name Colaguori as a third-party defendant.

We note at the outset that *Stewart v. Sbarro,* 142 *N.J.Super.* 581, 362 *A.*2d 581 (App.Div.), *certif. denied,* 72 *N.J.* 459, 371 *A.*2d 63 (1976), did not categorically conclude that a non-client was prohibited from suing an attorney for legal malpractice.   In that case, Stewart, the former owner of a business, sued the purchasers of the business, his own counsel, and counsel for the purchasers.   We stated:

> It is true that generally an attorney is not liable to third persons for negligence in the performance of his professional duties.  But this rule is not all encompassing.  Thus where an attorney assumes a fiduciary obligation, it applies to persons who, though not strictly clients, he has or should have reason to believe rely on him.  We believe, moreover, that *where, as here, an attorney undertakes a duty to one other than his client, he may be liable for damage caused by a breach of that duty to a person intended to be benefitted by his performance.*
>
> [*Id.* at 593, 362 *A.*2d 581 (citation omitted) (emphasis added).]

In *Stewart,* we reversed a trial court decision dismissing plaintiff's complaint against his own counsel *and* against the purchaser's attorney.  *Id.* at 594, 362 *A.*2d 581.

The Supreme Court has since concluded that an attorney may be liable for negligence resulting in damages to non-clients.  *Petrillo v. Bachenberg,* 139 *N.J.* 472, 655 *A.*2d 1354 (1995).  *See also, Atlantic Paradise Assocs., Inc. v. Perskie, Nehmad & Zeltner,* 284 *N.J.Super.* 678, 666 *A.*2d 211 (App.Div.1995), *certif. denied,* 143 *N.J.* 518, 673 A.2d 276 (1996); *Albright v. Burns,* 206 *N.J.Super.* 625, 503 *A.*2d 386 (App.Div.1986); *Restatement (Second) of Torts* § 525 (1977).  The motion judge's decision also failed to consider the principles of the entire controversy rule, embodied in *Rule* 4:28–1(a) and as fully discussed in *Cogdell, supra,* 116 *N.J.* 7, 560

---

[3] The motion was decided prior to the Supreme Court's decisions in *DiTrolio v. Antiles,* 142 *N.J.* 253, 662 *A.*2d 494 (1995); *Circle Chevrolet v. Giordano, Halleran & Ciesla,* 142 *N.J.* 280, 662 *A.*2d 509 (1995); *Mystic Isle Development Corp. v. Perskie & Nehmad,* 142 *N.J.* 310, 662 *A.*2d 523 (1995);  and *Mortgagelinq Corp. v. Commonwealth Land Title Ins. Co.,* 142 *N.J.* 336, 662 *A.*2d 536 (1995).

A.2d 1169. Based on these considerations, we conclude that the court's denial of defendants' motion constituted error at the ensuing trial and flawed the jury verdict.

### III

■ Our court rules dictate that leave to amend pleadings "should be freely granted in the interest of justice." *Tomaszewski v. McKeon Ford, Inc.*, 240 *N.J.Super.* 404, 411, 573 *A.2d* 501 (App.Div.1990) (construing *Rule* 4:9–1). In our opinion, Colaguori was a necessary party for just adjudication. Under *Rule* 4:28–1, "A person ... shall be joined as a party to the action if (1) in the person's absence complete relief cannot be accorded among those already parties...." *R.* 4:28–1(a).

Our conclusion is based upon the facts developed in discovery which led to defendants' motion seeking leave to file their third-party complaint. The testimony at trial clearly reinforces this conclusion.

As we view defendants' pleadings, defendants contended that they were not negligent, but even if they were negligent, that plaintiff's counsel, Colaguori, had committed legal malpractice. Defendants further contend that Colaguori's malpractice was either the superseding cause of plaintiff's loss or was a concurrent cause of plaintiff's loss. In *Davis v. Brooks*, 280 *N.J.Super.* 406, 655 *A.2d* 927 (App.Div.1993), we discussed these theories:

> There is no question that there may be any number of causes intervening between a negligent act and a final injurious occurrence. If they are reasonably foreseeable, each intermediate cause may be deemed a proximate result of the first wrongful act. The original negligence is deemed to continue and operate contemporaneously with all intervening acts of negligence that might reasonably be foreseeable, so that the original negligence is regarded as a concurrent cause of the final resulting injury. The causal connection may be broken by a superseding intervening cause. Such a cause must be one that so entirely supersedes the operation of the first tortfeasor's negligence that it alone caused the injury, without the first tortfeasor's negligence contributing thereto in any material way. But where the original tortfeasor's negligence is an essential link in the chain of causation, such a causal connection is not broken if the intervening cause is one which might, in the natural and ordinary course of things, be anticipated as not entirely improbable.

[*Id.* at 412, 655 *A.*2d 927.]

At the time of defendants' motion, the judge was obliged to consider whether defendants' theory presented a potentially viable cause of action entitling them to pursue discovery. Had the motion judge considered that a lawyer's malpractice might be the basis of a negligence claim in favor of a non-client, he would have been obliged to grant defendants' motion for leave to file a third-party complaint.

Viewed from the perspective of the trial judge hearing the testimony presented at trial, the motion judge's error becomes even more evident. Because defendants were not permitted to join Colaguori as a potential joint tortfeasor, defendants attempted to establish that Colaguori's legal malpractice was the sole proximate cause of plaintiff's loss.

In plaintiff's direct case, she presented an expert witness in the field of real estate and also called defendant Harsche as a witness. Plaintiff's real estate expert, Carmen Capece, opined that the absence of a certificate of registration for the triplex "should have been a red flag in the listing agent's mind as soon as it came in." Additionally, according to Capece, the person who entered the listing in the multiple listing computer system, the selling agent, and the appraiser all should have picked it up. Based on his knowledge of the "hotel multiple dwelling regulations," Capece thought that anyone seeing the chain ladder should have made further inquiry, stating "can you imagine being on the third floor trying to climb out on that?" On cross-examination, Capece admitted that plaintiff's attorney was also responsible for ascertaining whether the triplex was registered with the State. Plaintiff called defendant Harsche as a witness. Harsche indicated that after working for twenty-seven years as a laborer on a tugboat, he attended the Melvin W. Funk Real Estate Institute and obtained his agent's license in 1987. The course of study was ninety hours, over two or two and one-half weeks. The textbook used, Frank W. Kovats, *Principles and Practices of New Jersey Real Estate*

(7th ed.1986), contained the following portions of the National Association of Realtors Code of Ethics:

ARTICLE 2. In justice to those who place their interests in his care, The REALTOR should endeavor always to be informed regarding laws ... [and] governmental regulations ... in order to be in a position to advise his clients properly.

.    .    .    .    .    .    .    .

ARTICLE 9. The REALTOR shall avoid exaggeration, misrepresentation, or concealment of pertinent facts relating to the property in the transaction.

.    .    .    .    .    .    .    .

The REALTOR shall be obligated to discover and disclose adverse factors reasonably apparent to someone with expertise in only those areas required by their real estate licensing authority. Article 9 does not impose upon the REALTOR the obligation of expertise in other professional or technical disciplines.

According to Harsche, he thought that he had satisfied these obligations by calling the municipal zoning officer and tax office. He was told that the property was "a legal triplex," and he believed this to be true at the time of the sale. This was the only multiple dwelling that he had ever sold. He was aware that there were building and fire safety codes but did not know that they applied to a triplex until plaintiff filed her complaint. Harsche made no inquiries about State requirements that might apply to this triplex.

Harsche stated in his deposition, parts of which were read into the record, that licensing requirements for multiple dwellings were not part of the curriculum at the Melvin W. Funk Real Estate Institute. Harsche later testified that he could not recall any lectures on either the Hotel and Multiple Dwelling Law or the Uniform Fire Code. In his testimony as plaintiff's witness, however, he read aloud a section of his textbook explaining that all landlords except those occupying one unit of a two-family home were required to: (1) register with the municipal clerk and the Bureau of Housing Inspection; (2) give a copy of the statement of registration to each tenant; and (3) post a copy in a conspicuous place in the building. The text advised that a landlord who did not comply could be fined up to $500 and that the Hotel and

Multiple Dwelling regulations were available from the Bureau for $5. Harsche was sure that he had read and studied this section when he prepared for his test but had forgotten it when he sold the triplex to plaintiff.

During defendants' case, defendants called two real estate experts and one attorney with expertise in real estate transactions. The first expert, James Greaves, opined that when a buyer or seller is represented by an attorney, as both were in this transaction, "the role of the realtor changes somewhat because our services are reduced.... The realtor ... becomes more of a facilitator in a transaction and may run things around and expedite it ... but actually the attorneys themselves take over...." Greaves testified that it was the duty of the attorney, not the realtor, to ensure that the triplex conformed with the standards of the Hotel and Multiple Dwelling law, and therefore, the realtors did nothing wrong.

James Hornberger, the second expert in real estate, agreed that the realtor here had no "obligation to go to the State ... to see if this is subject to the Hotel and Multiple Dwelling law." He viewed the absence of State registration as a latent or hidden defect and thought that the municipality should have advised Harsche of this requirement.

Clyde Donohugh, an experienced real estate attorney who reviewed this transaction for Weichert, asserted that it was the duty of the attorney for the buyer, not the realtor, to determine that the property was subject to State regulation. Donohugh pointed out that Arthur S. Horn, *Residential Real Estate Law and Practice in New Jersey*, § 2.15(b)(2) (1992), a learned treatise and "the Bible" of real estate law, contained a section entitled "Multiple Dwellings Law," which stated: "[t]he purchaser's attorney must ascertain whether the property is in compliance with the multiple dwelling law," and "[i]t is ... extremely important that a purchaser of a multiple dwelling insert a clause in the Contract that the building complies with the provisions of the Hotel and Multiple Dwelling Law." Horn's book contained a suggested con-

tract clause on this point and included it in a checklist of items that should be in the contract.

Donohugh stated that a triplex needed a "green card," or a certificate of registration. "There would be a little bell and whistle that would go off ... and you would say, did anybody check and see if they've got the green card...."

We think it is clear from the testimony presented at trial that the denial of defendants' motion for leave to file a third-party complaint was a clear error. The testimony of the real estate experts, construed favorably to defendants, would permit a conclusion that plaintiff's counsel's duty to his client also included a fiduciary duty to the realtor to facilitate the transaction to a successful conclusion. Both plaintiff's expert and two of defendants' experts opined that it was Colaguori's duty to assure proper compliance with the multiple dwelling law. Had Colaguori performed his duty after the contract was executed, the failure to comply with the Hotel and Multiple Dwelling Law, *N.J.S.A.* 55:13A–1 to –20, would have become evident, and the contract of sale might have been amended to protect plaintiff or might even have been rescinded. Had Colaguori amended the contract before its execution, requiring the seller to guaranty or warranty compliance with *N.J.S.A.* 55:13A–1 to –20, the contract might never have been executed.

## IV

As noted above, special interrogatories were submitted to the jury. The interrogatories as submitted further demonstrate the error attributable to the denial of defendants' third-party action motion. Additionally, the special interrogatories, when compared to the trial judge's jury charge, reflect that a reversal of the judgment is necessary.

On plaintiff's negligence claim, the judge submitted the following questions:

3. State whether the defendants were negligent in the handling of the subject real estate transaction?

Yes ___   No ___

4. If you answered # 3 Yes, was this negligence a proximate cause of the loss claimed to be suffered by plaintiff?

Yes ___   No ___

7. Was plaintiff negligent based upon the acts of others acting on her behalf?

Yes ___   No ___

8. If you answered # 7 Yes, was this negligence a proximate cause of the loss claimed to be suffered by plaintiff?

Yes ___   No ___

If No, go to #9

If Yes, compare the negligence of plaintiff and defendant.

Negligence of defendant                                    ___%
Negligence of plaintiff & others                           ___%
   Total                                     100%

■ Although there was testimony that would have permitted a jury to find plaintiff negligent for her *own* acts or omissions, the issue of plaintiff's *own* negligence was not submitted to the jury. The only question submitted pertained to "plaintiff['s] negligence based upon the acts of others," and not her own negligence. Moreover, the charge to the jury did not define vicarious liability, did not discuss the law of principal and agent, and did not specifically discuss the term "others." From the testimony presented at trial, it could be adduced that the actions or inactions of the plaintiff, defendants, Colaguori, the home inspection company, the title company, and the mortgagee may have all contributed to the completion of the subject real estate transaction. The jury was clearly not prepared to answer question seven.

We also note that question seven did not match question eight. As noted above, the primary question, number seven, asked: "[w]as plaintiff negligent based upon the acts of others?"; Question eight asked the jury to "[c]ompare the negligence of plaintiff and defendant[sic]." Question eight provided a line for assessing the "negligence of defendant" and a separate line as to "negligence of plaintiff & others." To be consistent, the jury should have been asked only to "compare the negligence of plaintiff *based upon the*

*acts of others,* and defendants." The corresponding line provided for assessing negligence should have read, "negligence of plaintiff *based upon the acts of others.*" The phrase as written, "[n]egligence of plaintiff & others" is confusing as it implies that the jury is assessing the negligence of plaintiff based on her own acts *and* the acts of others.

The interrogatories required the jury to assess the conduct of non-parties to the litigation without any charge on vicarious liability and without a determination as to whether any or all of the non-parties' fault was attributable to plaintiff as a principal. Clearly the jury was ill-prepared to answer question eight.

■ As noted, there was evidence presented at trial that the plaintiff may have been negligent by her own acts. Colaguori testified that plaintiff never mentioned the layout of the house, the third floor unit, or the chain ladder. Despite the warning by defendants that plaintiff should have the building inspected, plaintiff hired a home inspector but did not request a full inspection which would have included a review of the applicable codes. Although plaintiff was instructed by her mortgage company to obtain a certification from her attorney, she never shared this information with her attorney. Additionally, at the real estate settlement, no one requested the attorney's certification, which was a requirement of the mortgagee. The closing ended without the production of that document.

Had Colaguori been named as a third-party defendant, the jury would have been asked to assess *separately* the negligence of plaintiff, defendants, and Colaguori. Additionally, had the negligence issues been properly submitted by the jury, the ultimate assessment of defendants' liability for consumer fraud may have been different. We therefore conclude that the entire verdict is flawed, and a retrial on all issues is mandated. *See Ahn v. Kim,* 145 *N.J.* 423, 434, 678 A.2d 1073 (1996); *Kass v. Great Coastal Express, Inc.,* 291 *N.J.Super.* 10, 26–27, 676 *A.2d* 1099 (App.Div. 1996).

At the conclusion of the instructions to the jury, the trial judge spoke with counsel at sidebar. That colloquy was transcribed:

The Court: Let me indicate that one of the charges I did give, based on counsel's agreement and understanding that I should give it, was the one where the comparative negligence of Mr. Colaguori. And you both understand and in our charge conference, I said that I was, myself, somewhat troubled by that and the issue being whether or not a lay plaintiff could be responsible for the alleged negligence of her professional attorney, and the way the case went in that, obviously, to you had, and as the case went in to me as well, frankly seemed to be an issue in phrasing. My concern was that it might be, I think as I expressed with the back door, the negligence of Mr. Colaguori when he was not the attorney in this case. And I'm reminded—I had the occasion to review the entire controversy doctrine in the case of *Circle Chevrolet versus Giordano Halleran.* Sales were proper and they didn't sue any attorney in the case, and subsequent suit was brought in by the entire controversy. In this case, our case is very different because there was an intent to join Mr. Colaguori which was rebuffed for whatever reason, and he was not technically a part of the case. But the way it was resolved with counsel was an agreement, and actually the suggestion of the two of you was to not highlight the specific negligence of the attorney but of all the various people that you have characterized as agents for the plaintiff and I just wanted to have that—

Plaintiff's counsel: That's correct, Your Honor.

Defendants counsel: Yes, Thank you.

From the sidebar conference, it is abundantly clear that the trial judge met with counsel prior to the charge to the jury or at the inception of the trial, or perhaps in chambers during the trial to discuss the potential difficulty attributable to the absence of Colaguori as a party defendant. The comments of the trial judge at sidebar allow us to infer that, at least at that point, he too realized that the motion judge should have granted defendants' motion to join Colaguori as a third-party defendant.

The sidebar conference also reflects the judge's bewilderment respecting plaintiff's potential vicarious liability for acts of "others." That bewilderment should have been resolved long before the charge was ever given to the jury.

There is precedent for reversal of a jury verdict where special interrogatories to a jury are confusing or do not comport with the instructions given the jury. *Ginsberg v. St. Michael's Hospital,*

292 *N.J.Super.* 21, 678 *A*.2d 271 (App.Div.1996); *Kass, supra,* 291 *N.J.Super.* 10, 676 *A*.2d 1099.

Because this matter must be retried, we need to address one point raised by defendants on this appeal. Defendants have cited *Chattin v. Cape May Greene, Inc.*, 243 *N.J.Super.* 590, 581 *A*.2d 91 (App.Div.1990), *aff'd o.b.*, 124 *N.J.* 520, 591 *A*.2d 943 (1991), in which the defendant, a developer, alleged that the jury should have considered the issue of liability of a co-defendant, the manufacturer of faulty windows, for consumer fraud. *Id.* at 606, 581 *A*.2d 91. We noted in *Chattin:*

> [The developer] does not argue that the jury ... should have been asked to consider [the manufacturer's] liability on any basis other than consumer fraud. Therefore, we have no occasion to consider whether one defendant found liable for negligence or breach of warranty and another defendant found guilty of consumer fraud may be considered joint tortfeasors under the Joint Tortfeasors Contribution Law.
>
> [*Ibid.* n. 6.]

Should this issue actually arise at the retrial, it must be addressed by the trial judge before the jury verdict is molded into a judgment.

The errors discussed, whether viewed separately or collectively, require a new trial on all issues.

Reversed and remanded for a new trial.