**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4442-15T4

MICHAEL McCARTHY and
LUCYANN McCARTHY, husband
and wife,

      Plaintiffs-Respondents,

v.

PRUDENTIAL FOX & ROACH,
THOMAS PALERMO, and MICHELLE
 WOODWARD,

      Defendants-Appellants,

and

WEICHERT REALTORS COASTAL,
and ALLEN H. VERNON, JR., ESQUIRE,

      Defendants.

_____

Submitted April 9, 2018 – Decided September 14, 2018

Before Judges Accurso, O'Connor and Vernoia.

On appeal from Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-0041-11.

Reger Rizzo & Darnall, LLP, attorneys for appellants (Richard M. Darnall and John M. Cinti, on the briefs).

Castellani Law Firm, LLC, attorneys for respondents (David R. Castellani, on the brief).

Greenbaum, Rowe, Smith & Davis, LLP, attorneys for amicus curiae New Jersey REALTORS (Barry S. Goodman, of counsel and on the brief; Justin P. Kolbenschlag and Leslie A. Barham, on the brief).

PER CURIAM

Defendants Michelle Woodward, Thomas Palermo and their employer, defendant Prudential Fox & Roach, appeal from a jury verdict in favor of plaintiffs Lucyann and Michael McCarthy on claims of negligent misrepresentation and supervision and consumer fraud arising out of plaintiffs' purchase of property near the ocean in Cape May County. Defendants claim the trial court erred by: (1) depriving them of their rights under the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 to -5.8, by failing to allow the jury to apportion fault to plaintiffs; (2) depriving them of the safe harbor exemption, N.J.S.A. 56:8-19.1, of the Consumer Fraud Act, N.J.S.A. 56:8-1 to -195; (3) permitting plaintiffs to present and combine claims for mutually exclusive damages without proper limiting instructions; (4) permitting plaintiffs' experts to render net opinions and testify about improper and irrelevant damage calculations; and (5) improperly calculating the attorney fee award.

2

Because we conclude the court's failure to allow the jury to assess plaintiffs' comparative fault deprived defendants of a fair trial and the instructions on damages were flawed, we reverse the judgment and remand for a new trial on all issues. See Ahn v. Kim, 145 N.J. 423, 434 (1996) (stating the general rule that "issues in negligence cases should be retried together unless the issue unaffected by error is entirely distinct and separable from the other issues").

We briefly summarize the evidence put before the jury. Lucyann and Michael McCarthy were in the market for a vacation home at the shore in 2010. On the recommendation of Lucyann's father, they contacted a real estate agent, Thomas Palermo of Prudential Fox & Roach, to assist them in their search. Palermo uses a wheelchair and relies on another Prudential Fox & Roach agent, defendant Michelle Woodward, to act as his assistant and buyer's agent. Palermo supervised Woodward in her efforts on behalf of plaintiffs.

Plaintiffs were looking for a house within walking distance of the beach with at least five bedrooms. After seeing several properties with Woodward, Lucyann asked Woodward to research a one-bedroom, one-bath house across the street from the beach in Strathmere, an unincorporated community within Upper Township in Cape May County. The property was owned by a bank, which acquired title in a mortgage foreclosure, and was offered for sale "as is" with no contingencies for approvals,

A-4442-15T4

permits or inspections. Lucyann told Woodward plaintiffs were interested in demolishing the "shack" on the property and building a new home. She testified that the property having been in foreclosure was appealing to the couple, who were looking to take advantage of the slump in real estate prices resulting from the economic downturn.

Prior to showing Lucyann the property, Woodward called the Upper Township zoning office for information about it. The employee she spoke to told her the lot was sixty by ninety-five feet and the zoning permitted twenty-seven percent lot coverage. Woodward's notes of the call included those facts, the phone numbers for the county health department and the zoning office, and some further information about building height and set-backs. The number for the health department was on the note because the property is serviced by a septic system and the zoning office told Woodward the property would require an updated septic permit before anything could be built, information Woodward passed on to plaintiffs.

Based on the information she received from the Township, Woodward told plaintiffs they could build a 3100 square foot home on the lot. She claimed she gave the note to plaintiffs when they viewed the property together on February 14, 2010, and advised them to contact both the health department and the zoning office directly for more information. Lucyann, although acknowledging she saw Woodward's note on

that date and discussed the information on it with her, claimed Woodward just told her they needed a septic permit and did not provide her the note until closing a month later.

Although Michael, who worked in the financial services industry, had previously bought and sold several properties for investment with a partner, including one in Sea Isle, he conducted no due diligence regarding the lot he and his wife intended to purchase for their family vacation home.  Instead, after Woodward advised them the property last sold for $850,000 a few years earlier and previously sold for $1,250,000, plaintiffs decided to make an all-cash offer of $386,100, days after viewing the property.  Woodward directed plaintiffs to a lawyer, defendant Allen H. Vernon, Jr., to draft the contract.  Although Woodward engaged Vernon on plaintiffs' behalf, she provided them his name and telephone number and advised them to call him to discuss the contract.  Woodward faxed a copy of the contract Vernon prepared to Lucyann for signature on February 18.

Plaintiffs signed the contract without reading it or speaking to Vernon, and Woodward submitted it to the seller's agent, Weichert Realtors Coastal.  The bank accepted the offer but insisted on using its own contract.  According to Palermo, he told Michael that Weichert advised the bank would not accept any contingencies, and that he should read the bank's contract as plaintiffs would not be able to make any changes

5

to the document. Plaintiffs signed the bank's form of contract on March 8 without reading it or consulting Vernon.

After signing the contract, Lucyann became worried about the property being sold "as is." She claimed Woodward repeatedly assured her that people tear down existing structures all the time, and that they would be able to build the home they wanted. Woodward claimed she never told plaintiffs they could rely on her calculations about the size home permitted on the lot, but conceded she told them they could build a 3100 square foot home if they obtained all the appropriate permits. Woodward had never handled a real estate transaction involving either bay front or ocean front property, had not dealt with the purchase or sale of homes serviced by septic systems instead of sewers and was not familiar with CAFRA, the Coastal Area Facility Review Act.

After the closing, plaintiffs contacted Upper Township to obtain a septic permit and learned the lot was subject to CAFRA and the additional permits they would need to allow them to build. Upon learning they could only build a 900 square foot house without additional approvals, plaintiffs put the property on the market for $650,000, later reducing the price to $550,000. Plaintiffs received no offers at those prices and they instead pursued a CAFRA approval from the Department of Environmental

Protection, eventually succeeding in obtaining approval to build a 2300 square foot home in late 2010.

In January 2011, plaintiffs filed suit against Woodward, Palermo, Prudential Fox & Roach, Vernon and Weichert Realtors Coastal. Plaintiffs settled with Weichert prior to trial. While the case was pending, plaintiffs received an all-cash offer of $400,000 for the property, which they turned down. After discovery closed, changes in the property's flood zone designation in 2013 following Superstorm Sandy allowed approval of a larger structure on the lot. In March 2014, plaintiffs obtained variance approvals to build the 3100 square foot house Woodward told them they could build. The court granted defendants' motion to reopen discovery to address those new facts. Plaintiffs were permitted to update their expert reports but declined to do so.

The case went to trial in June 2015 on claims of negligent misrepresentation and violation of the Consumer Fraud Act against Woodward, negligent supervision against Palermo and legal malpractice against Vernon. In addition to the testimony we summarized above, the jury heard from an expert presented by plaintiffs, who opined the realtors breached the standard of care for buyers agents by not alerting plaintiffs to CAFRA and referring them to a planner, engineer or attorney for advice as to whether they could build the home they wanted. The expert conceded on cross-examination, as had Michael, that plaintiffs bore some responsibility for their predicament.

A-4442-15T4

An appraiser was permitted to testify to the difference in value based on comparable sales between a 2300 square foot three-bedroom house and a 3100 five-bedroom home built on the property on both the closing date, March 19, 2010, and June 21, 2012, the date of the appraiser's inspection. In addition to the proofs on diminished value, plaintiffs were also permitted to testify as to their loss-of-use damages, including the $49,000 they spent over the course of five years on rent of an alternative summer home and the $31,364 in real estate taxes on the Strathmere lot from closing through trial; as well as the out-of-pocket expenses they incurred in getting the necessary approvals to build the 3100 square foot house they intended, including their closing costs and title insurance. Plaintiffs claimed their damages totaled $420,892.

Although initially ruling that the jury would apportion fault among plaintiffs and defendants, with the exception of Vernon to whom the defense of comparative negligence was not available, the court changed course just before closing statements. Faced with the dilemma of crafting a verdict sheet with one of the three defendants a lawyer facing a professional malpractice claim, the court determined to remove plaintiffs from the verdict sheet, fearing that asking the jury to allocate damages among plaintiffs and defendants would cause too much confusion. The jury returned a verdict of $165,000 against all three defendants, finding Woodward fifty-five percent liable, Palermo forty percent and Vernon five percent. The court entered an amended final

judgment applying a $7500 credit for the Weichert settlement and $18,730.63 in pre-judgment interest for a total award of $176,230.63, allocated $96,926.85 to Woodward, $70,492.25 to Palermo and $8811.53 to Vernon.  The court trebled the $86,625 compensatory award to Woodward, net of pre-judgment interest, for a total award of $259,875, which with pre-judgment interest added totaled $270,176.85.

The court denied defendants' motion for a new trial and awarded plaintiffs $330,617.33 in fees and costs, allocated $314,086.46 to Woodward and $16,530.87 to Vernon.  The entire judgment against Woodward totaled $584,263.31 and the combined total against Prudential Fox & Roach agents Woodward and Palermo was $659,755.56.[1]  The total judgment against Vernon was $25,342.40.  This appeal followed.

We begin with defendants' claim that the judge erred in failing to allow the jury to assess plaintiffs' fault pursuant to the Comparative Negligence Act.  Plaintiffs counter that claim by arguing the trial court correctly declined to impute responsibility for a consumer fraud to the victims of the fraud by applying the Comparative Negligence Act, and that there were no facts in the record to support the notion that plaintiffs contributed to Palermo's negligent supervision of Woodward.  As to the negligent

---

[1]  By agreement of counsel, Prudential Fox & Roach was not included on the jury sheet but was included in the judgment.

misrepresentation claim, plaintiffs argue the court correctly concluded the jury's determination that plaintiffs were justified in relying on the advice of defendants was the same as asking the jury to determine plaintiffs' comparative negligence. We disagree with plaintiffs on all points, and conclude the trial court erred in failing to allow the jury to assess plaintiffs' fault under the Comparative Negligence Act.

The law is well settled that the Comparative Negligence Act applies to Consumer Fraud Act cases. See Gennari v. Weichert Co. Realtors, 148 N.J. 582, 608-09 (1997) (holding in Consumer Fraud Act cases "the trial court should determine damages under N.J.S.A. 2A:15-5.1, apportioning a percentage of fault to each culpable party"); Helmar v. Harsche, 296 N.J. Super. 194, 210 (App. Div. 1996) (reversing Consumer Fraud Act judgment against realtor because the trial court, although permitting the jury to assess plaintiff's comparative fault, did not permit realtor to assert a third party contribution claim alleging malpractice by plaintiff's counsel). See also Sullivan, New Jersey Consumer Fraud § 13:2-5 (2018) ("The fault and damage-apportionment principles of New Jersey's Comparative Negligence Act (and the related Joint Tortfeasors Contribution Law) are fully applicable to claims arising under the Consumer Fraud Act.").

To the extent the trial court determined to prevent the jury from considering the possible comparative negligence of plaintiffs because Woodward rendered professional

advice, it clearly erred. It is certainly true that "professionals may not diminish their liability under the Comparative Negligence Act when the alleged negligence of the client relates to the task for which the professional was hired." Aden v. Fortsh, 169 N.J. 64, 78 (2001). The Court has explained the reason for the rule is that "when the duty of the professional encompasses the protection of the client or patient from self-inflicted harm, the infliction of that harm is not to be regarded as contributory negligence on the part of the client." Id. at 75 (quoting Conklin v. Hannock Weisman, 145 N.J. 395, 412 (1996)).

But such professionals are not subject to Consumer Fraud Act claims. See Plemmons v. Blue Chip Ins. Servs., Inc., 387 N.J. Super. 551, 564 (App. Div. 2006) (quoting Macedo v. Dello Russo, 178 N.J. 340, 344 (2004)) (noting "members of 'learned professions,' including those who occupy a 'semi-professional status,' engage in 'an activity beyond the pale of the [CFA]'"). Plaintiffs could bring their Consumer Fraud Act claim against Woodward only because she is not considered a member of one of the so-called learned professions beyond the reach of the Act. See Strawn v. Canuso, 140 N.J. 43, 60 (1995) ("Real estate brokers, agents, and salespersons representing professional sellers of real estate are subject to the provisions of the Consumer Fraud Act.").

11

Because Woodward was not a professional with an obligation to protect plaintiffs "from self-inflicted harm," see Aden, 169 N.J. at 75 (quoting Conklin, 145 N.J. at 412), there was no basis for the trial court to have deprived Woodward from having the jury assess plaintiffs' comparative negligence for entering into an "as is" purchase of property unsuitable in the short term for their needs. We have certainly implied, if not expressly held, that real estate agents and brokers are entitled to have the jury charged on a plaintiff's comparative negligence when "there was evidence presented at trial that the plaintiff may have been negligent by her own acts." Helmar, 296 N.J. Super. at 210.

There was certainly such evidence here. Woodward testified she urged plaintiffs to call the Township zoning office and the county health department directly to discuss what could be built on the property and to contact Vernon to discuss the contract. Palermo testified he told Michael to read the contract insisted upon by the bank as he would be unable to make any changes. Plaintiffs admitted they did not do any of those things. Michael, despite buying and selling for investment at least half a dozen properties, including one at the shore, conceded he took no steps to ensure he and his wife could build the home they envisioned on the lot. Plaintiffs made an all-cash offer of $386,100 on property sold "as is," not as an approved building lot, across the street from the beach within four days of seeing it after Woodward told them it had last sold

for $850,000 before the economic downturn and had previously sold for $1,250,000. Michael candidly admitted on cross-examination that he and his wife bore some responsibility for the losses they alleged transpired. There was certainly evidence in the record to permit a jury to determine plaintiffs' cupidity and lack of due care was a proximate cause of their ensuing problems.

We agree with defendants and amicus New Jersey REALTORS that the trial court's decision to deny Woodward the right to have the jury apportion plaintiffs' fault under comparative negligence principles based on her "professional advice" while stripping her of the protections our law provides professionals from Consumer Fraud Act claims is without precedent in our cases and deprived her of a fair trial. Although a leading commentator has suggested that "an assignment of a comparative-fault percentage to the victim in a consumer-fraud case seems unlikely," as "[a] seller who engages in deceptive or unconscionable conduct in an effort to dupe a purchaser should not be able to avoid part of the consequences on the ground that the purchaser was exceptionally gullible," Sullivan, § 13:2-5, we do not judge an assignment of a comparative fault percentage to plaintiffs as unlikely on the facts presented here.

No one disputes that Woodward merely passed on information provided by someone in the Township zoning office, correctly calculating the size house that could theoretically be built on the lot based on what the individual told her of the lot size and

A-4442-15T4

lot coverage requirements. Plaintiffs certainly presented proof, including the opinion of an expert, that Woodward was negligent in not more thoroughly researching the property and referring plaintiffs to experts in CAFRA permitting, but there is no proof in the record that she intended to dupe them into the purchase. Accordingly, we do not view the court's error in instructing the jury on comparative negligence as harmless. Instead, it deprived Woodward of the fair trial to which she was entitled.

The trial court also erred in finding the Comparative Negligence Act inapplicable to plaintiffs' claims for negligent misrepresentation because plaintiffs reasonably relied on the misrepresentation. Further, its conclusion that the jury's determination that plaintiffs reasonably relied on Woodward's misrepresentation was the equivalent of an assessment of plaintiffs' comparative fault under the Comparative Negligence Act is incorrect as a matter of law.

The Supreme Court in H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 350-51 (1983), noted the availability of a comparative negligence defense to negligent misrepresentation claims against an accounting firm for negligently prepared financial statements on which reasonably foreseeable recipients relied for business purposes. Accordingly, there is no question but that the Comparative Negligence Act applies to claims of negligent misrepresentation.

A-4442-15T4

Of course, a plaintiff failing to prove reasonable reliance on the misrepresentation, has failed to establish liability. See id. at 334 ("An incorrect statement, negligently made and justifiably relied upon, may be the basis for recovery of damages for economic loss or injury sustained as a consequence of that reliance."). Accordingly, the trial court's ruling that the Comparative Negligence Act does not apply when a plaintiff can show reasonable reliance on the misrepresentation would work to deprive defendants of the defense, contrary to the Court's holding in Rosenblum.

A defendant, of course, is free to defend a negligent misrepresentation claim by arguing its conduct was not a proximate cause of the plaintiff's injury because plaintiff's own conduct was solely responsible for the loss. In that way, a defendant, even one barred from asserting the plaintiff's own negligence as a defense because of the defendant's duty to protect the plaintiff from self-inflicted harm, could have the jury consider plaintiff's conduct. See Aden, 169 N.J. at 82-83 (explaining that although plaintiff's failure to read an insurance policy could not be considered comparative fault in the insured's action against his broker for professional malpractice, the jury could consider whether the plaintiff's failure to read the policy "severed the causal connection between the broker's fault and the insured's harm").

But that is not the same, obviously, as asking the jury to assess comparative fault. A defendant in that scenario is arguing it has no liability because plaintiff's own

15

negligence was the sole cause of the harm. See ibid. ("The trial court did not preclude [the defendant broker] from presenting evidence to attempt to prove that Aden's admission that he did not read the policy until after the fire was the proximate cause of the harm.") (emphasis added). Cf. Fabian v. Minster Mach. Co., Inc., 258 N.J. Super. 261, 276-77 (App. Div. 1992) (explaining a product manufacturer's effort to shift responsibility to the non-party employer, claiming its conduct was the sole proximate cause of the employee's accident, the so-called "empty chair defense," is " actually a claim that the defendant's conduct was not a substantial contributing factor to the accident," thus focusing the jury's attention upon the plaintiff's duty to prove the defendant's conduct was a proximate cause of the accident).

A jury does not consider a defendant's affirmative defense of comparative negligence to a plaintiff's negligent misrepresentation claim until after it has already decided the plaintiff has established all elements of the cause of action, including reasonable reliance. Cf. Bencivenga v. J.J.A.M.M., Inc., 258 N.J. Super. 399, 410 (App. Div. 1992) ("The [Comparative Negligence Act] requires the trier of fact to translate common liability of joint or concurrent tortfeasors, including plaintiff, into a percentage of causal fault that contributed to plaintiff's injuries."). That it may consider the plaintiff's conduct in determining whether the defendant's conduct was a proximate cause of the accident in no way deprives a non-professional defendant such as

16

Woodward the right to have the jury separately assess whether the plaintiff's own conduct was also a proximate cause of the harm. See Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150, 205 (1979) ("The comparative fault scheme seeks to compel the balancing of the respective faults of the plaintiff and defendant."). Thus the court was simply incorrect in ruling the jury's finding that plaintiffs reasonably relied on Woodward's misrepresentation was the equivalent of an assessment of plaintiffs' comparative fault under the Comparative Negligence Act.

We are also convinced the court erred in ruling the Comparative Negligence Act did not apply to the negligent supervision claim against Palermo. In reasoning that plaintiffs could not "contribute to negligent supervision in any way" because it involved only conduct between Palermo and Woodward, the trial court misapprehended the concept of plaintiffs' fault under the Comparative Negligence Act.

We have affirmed application of the Comparative Negligence Act to a claim of negligent supervision. See Stella v. Dean Witter Reynolds, Inc., 241 N.J. Super. 55, 63-64, 77 (App. Div. 1990). In Stella, the plaintiff was swindled by a stockbroker employed by Dean Witter, who duped the plaintiff into investing in a non-existing fund. Id. at 60-62. The plaintiff sued Dean Witter on several theories, including its negligent supervision of the stockbroker. Id. at 77. The jury found Dean Witter liable for negligent supervision, and we found the trial judge correctly determined the plaintiff's

17

"recovery for negligence must be reduced to reflect the jury's finding that he was 30 percent negligent." Id. at 76.

The plaintiff in Stella obviously had nothing to do with Dean Witter's supervision of its swindling stockbroker, as it involved only conduct between the defendant employer and its employee, just as here. What the Comparative Negligence Act measures is not the plaintiff's contribution to the defendant's conduct alleged to have caused the plaintiff's loss but the plaintiff's responsibility for the event that caused the harm, here, the purchase of property unsuited, at least for some period of time, for the construction of the 3100 square foot house plaintiffs intended to build. See Suter, 81 N.J. at 205 ("The plaintiff's fault relates to his failure to act as a reasonably prudent person in regard to his own well-being, proximately resulting in his avoidable injury. 'Fault' describes the law's view of the respective parties' relationships with the occurrence of injury.") (Clifford, J., concurring).

Because the Comparative Negligence Act is applicable "[i]n all negligence actions and strict liability actions in which the question of liability is in dispute," N.J.S.A. 2A:15-5.2(a), including those for negligent supervision, and there was sufficient evidence in the record to permit the jury to reasonably conclude plaintiffs' failure to act as reasonably prudent people in regard to the transaction was a proximate cause of the unsuitable purchase, see Roman v. Mitchell, 82 N.J. 336, 343 (1980), the

18

trial court erred in refusing to charge the jury on plaintiffs' comparative fault on their negligent supervision claim against Palermo.

Defendants assert, with support in the transcript, that the trial court's failure to charge the jury in accordance with the Comparative Negligence Act resulted from the problem posed by having the jury consider plaintiffs' fault vis-á-vis Woodward and Palermo but not Vernon, to whom the defense of comparative negligence was not available.  See Conklin, 145 N.J. at 412.  If that is true, it is indeed unfortunate because the Supreme Court resolved the "knotty problem" of molding the verdict in such cases in Ryan v. KDI Sylvan Pools, Inc., 121 N.J. 276, 291-96 (1990).  Instructing the jury in accordance with the Comparative Negligence Act and molding the verdict in accordance with Ryan was required here because of Vernon's presence on the verdict sheet.  Avoiding the difficulty of molding the verdict by depriving Woodward and Palermo of the right to have the jury charged in accordance with the Comparative Negligence Act was error.

Because this matter must be retried, we consider the balance of defendants' arguments with respect to the trial court's decision on the applicability of the safe harbor provision of the Consumer Fraud Act and its instructions on damages and the award of fees for its guidance in any future proceedings.

A-4442-15T4

The argument by defendants and amicus that the trial court erred in finding the safe harbor provision of the Consumer Fraud Act, N.J.S.A. 56:8-19.1, inapplicable requires only brief comment. N.J.S.A. 56:8-19.1 provides "there shall be no right of recovery of punitive damages, attorney fees, or both," under the Consumer Fraud Act, against "a real estate broker, broker-salesperson or salesperson licensed under [N.J.S.A.] 45:15-1 et seq. for the communication of any false, misleading or deceptive information provided to the real estate broker, broker-salesperson or salesperson, by or on behalf of the seller of real estate located in New Jersey" so long as the licensee "[h]ad no actual knowledge of the false, misleading or deceptive character of the information;" and "[m]ade a reasonable and diligent inquiry to ascertain whether the information is of a false, misleading or deceptive character." N.J.S.A. 56:8-19.1(a) and (b) (emphasis added). Because the information Woodward obtained from the zoning office was not provided to her "by or on behalf of the seller," the trial court ruled the provision inapplicable here. We agree.

Defendants and amicus's argument that Woodward met both requirements of the exemption, that is, that she was unaware of the misleading nature of the information she received from the Township and passed on to the plaintiffs and made a reasonable and diligent inquiry because the information was based on the representation of a Township employee, while perhaps true, is beside the point. We agree with the trial judge that

those qualifiers are only relevant to information provided "by or on behalf of the seller," which the information Woodward sought out from the Township clearly was not. See Nicholas v. Mynster, 213 N.J. 463, 481 (2013) (advising that in order to understand a statute it is important to "view the statute's constituent parts to see how each piece operates within the overall scheme"). We find no error in the trial court's reading of the plain language of the statute. See DiProspero v. Penn, 183 N.J. 477, 492 (2005) (directing that words of the statute are to be ascribed "their ordinary meaning and significance" and read "in context with related provisions so as to give sense to the legislation as a whole").

We turn to damages. Over defendants' objections, plaintiffs were permitted to present testimony regarding the difference in value between the 3100 square foot house they intended to build and the 2300 square foot house they were approved to build in 2010, notwithstanding that by the time of trial they had approvals to build a 3100 square foot house. In addition to those proofs on diminished value, plaintiffs were also permitted to testify as to their loss-of-use damages, including $49,000 in summer rentals for five years and $31,364 in real estate taxes on the Strathmere lot from closing through trial; as well as the out-of-pocket expenses they incurred in getting the necessary approvals to build the 3100 square foot house they intended, including sums for closing costs and title insurance. The trial judge justified instructing the jury it could

award damages for diminution in value, loss of use, and plaintiffs' out-of-pocket or rescission expenses because all are available under the Consumer Fraud Act.

Although the trial judge was no doubt correct that diminished value, loss-of-use and out-of-pocket damages have all been applied in fraud cases, plaintiffs have provided us no case in which all three have been permitted in the same case. "Although specific rules regarding damages in fraud cases are formulated for sundry purposes, they must be subordinated to the basic objective of making the injured party whole." Correa v. Maggiore, 196 N.J. Super. 273, 285 (App. Div. 1984). "Hence, 'a given formula is improvidently invoked if it defeats a common sense solution.'" Ibid. (quoting 525 Main St. Corp. v. Eagle Roofing Co., 34 N.J. 251, 254 (1961)).

Diminution in value as a damage formula was improvidently invoked here and should not be employed on retrial.[2] Although plaintiffs could not immediately build the 3100 square foot house they bargained for, they could do so at the time of trial based on the change in the property's flood zone designation during the pendency of the litigation. Thus instructing the jury that it could consider the difference in value between the 3100 square foot home Woodward represented they could build on the site and the 2300 square foot home they were initially limited to, allowed plaintiffs to

---

[2] Accordingly, we need not address defendants' arguments related to the appraiser's testimony as we do not expect such testimony on retrial.

recover for a hypothetical loss that never materialized.[3]  A Consumer Fraud Act plaintiff is to be made whole, not compensated for threatened losses.  See Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 558 (2009).

Judged from that perspective, plaintiffs should be permitted to recover only those costs beyond what they would have incurred had the flood designation permitted a 3100 square foot house at the time of their purchase in 2010.  Thus closing costs and real estate taxes, for example, would not be recoverable as plaintiffs would have incurred them if the property would have been as represented.  The same is true for permit fees, and the costs of lawyers, planners or architectural drawings and the like.  But costs related to delays in constructing their home, such as the costs of renting another house for the period beyond when they could reasonably expect their house to have been completed or costs related to the re-drawing or re-presentation of plans would be

---

[3]  Plaintiffs' reliance on D'Agostino v. Maldonado, 216 N.J. 168, 195 (2013) to support their argument that damages were properly assessed "at the time the fraud [was] committed and not some other date when plaintiffs' damages may be mitigated in some respect by a fortuitous event such as . . . a re-zoning of plaintiffs' property" is misplaced. In D'Agostino, "when plaintiffs filed their complaint and later submitted their proofs at trial, they had not recovered their lost equity in the Property." Ibid.  D'Agostino stands for the proposition that the court's imposition of an equitable remedy, there rescinding the transaction and thus restoring plaintiffs' lost equity in the property, does not bar a finding of ascertainable loss.  Ibid. ("In determining the existence of an ascertainable loss, the trial court properly considered the plaintiffs' position when they came before the Court, not the position to which they would subsequently be restored because of the court's fashioning of an equitable remedy.").  D'Agostino addressed an ascertainable loss remedied by the court, not one that never materialized.

A-4442-15T4

recoverable. Of course, any such out-of-pocket or loss-of-use claims must be measurable. Plaintiffs may not recover for intangible loss of use or enjoyment. See Gennari, 148 N.J. at 613. The jury should be instructed it is to award no more than reasonably necessary to make plaintiffs whole. See Chattin v. Cape May Greene, Inc., 243 N.J. Super. 590, 605 (App. Div. 1990), aff'd o.b., 124 N.J. 520 (1991).

Finally, we address the award of fees on retrial. Plaintiffs were awarded $330,617.33 in legal fees, ninety-five percent of which were assessed against Woodward and Palermo. Unfortunately, the trial court did not explain how it assessed the extent of counsel's efforts on the non-Consumer Fraud Act claims, especially those brought against Vernon and Weichert as they cannot be considered as intertwined with the Consumer Fraud Act claim against Woodward. See id. at 613-14.

"In fixing counsel fees, a trial judge must ensure that the award does not cover effort expended on independent claims that happen to be joined with claims for which counsel is entitled to attorney fees." Grubbs v. Knoll, 376 N.J. Super. 420, 431 (App. Div. 2005). If the billing statements were inadequate to allow the court to segregate the fees attributable to the Consumer Fraud Act claim, the court should require counsel to resubmit them as it is counsel's obligation to differentiate between fee eligible and non-fee eligible claims. Further care must be taken to ensure that only fees for prosecuting the claim are compensated, fees related to non-litigation matters,

A-4442-15T4

including zoning board applications and construction loans are not properly compensable. See Hundred E. Credit Corp. v. Eric Schuster Corp., 212 N.J. Super. 350, 361 (App. Div. 1986).

We reverse the judgment as to defendants Woodward and Palermo and remand for a new trial on all issues. We do not retain jurisdiction.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4442-15T4